1

2

3

4                    IN THE UNITED STATES DISTRICT COURT

5              FOR THE NORTHERN DISTRICT OF CALIFORNIA

6

7  KETHON TRIGGS,                         No.  C-00-4201-CW

8           Petitioner,                   ORDER DENYING
                                          PETITION FOR
9      v.                                 WRIT OF
                                          HABEAS CORPUS
10 LEA ANN CHRONES, Acting Warden,

11         Respondent.

12 _____/

13

14     Petitioner Kethon Triggs, a state prisoner currently

15 incarcerated at Kern Valley State Prison, has filed a second

16 amended petition for writ of habeas corpus pursuant to 28 U.S.C.

17 § 2254 and a motion for an evidentiary hearing.  Respondent has

18 filed an answer to the second amended petition and an opposition to

19 the motion for evidentiary hearing.  Petitioner has filed a

20 traverse.  Having considered all of the papers filed by the

21 parties, the Court DENIES the motion for an evidentiary hearing and

22 DENIES the second amended petition for writ of habeas corpus.

23                              BACKGROUND

24 I.   Summary of the Case

25     On October 12, 1994, Marin County deputy sheriffs conducting a

26 drug- and crime-suppression patrol observed a bicyclist stopped on

27 a footbridge into Marin City, California.  Knowing the footbridge

28 to be a means of traveling into Marin City to purchase drugs, the

deputies followed the bicyclist to the corner of Bridge Street and Drake Avenue, where they observed him engaged in conversation with Petitioner near Hayden's Market, whose parking lot they knew as a place where drug-related problems occur.  The deputies observed Petitioner run toward Hayden's Market, while the bicyclist continued on Drake Avenue to a bus stop.  A few minutes later, the deputies observed Petitioner walk to the same bus stop and exchange something with the bicyclist.

Suspecting the exchange might be a drug transaction, the deputies radioed another deputy to stop the bicyclist.  This deputy stopped and searched the bicyclist and identified him as Gregory Miller but did not find any drugs.  Nevertheless, observing Miller's agitation, slurred speech, dilated eyes and tongue covered in yellowish-whitish residue, the deputy suspected that Miller was under the influence and arrested him.

Meanwhile, another deputy approached Petitioner.  Recalling that Petitioner was subject to a search and seizure clause as a condition of his probation, the deputy searched Petitioner and found in his pocket two rocks of suspected cocaine base weighing 0.29 and 0.38 grams respectively.  The deputies therefore took Petitioner into custody.  The rocks tested positive for cocaine.

The Marin County District Attorney charged Petitioner with possession of a controlled substance in violation of California Health and Safety Code § 11350(a), and alleged three prior felony convictions and two prison commitments.  On April 25, 1995, a jury found Petitioner guilty and found true the three prior convictions and two prison commitments.  The court imposed a sentence of

2

twenty-five years to life under the three strikes law, California Penal Code § 667(e), plus two one-year enhancements for Petitioner's prior prison commitments, for a sentence of twenty-seven years to life in prison.

II.   Procedural History

    A.   Proceedings on Appeal

    Petitioner appealed his conviction.  On December 24, 1996, the appellate court reversed his sentence in an unpublished opinion and remanded for re-sentencing to give the trial court an opportunity to exercise its discretion to strike one or more of Petitioner's prior convictions.

    On January 10, 1997, Petitioner filed a petition for review before the California Supreme Court.  The court denied the petition on February 26, 1997.

    On June 9, 1997, the superior court, on remand, ordered a psychiatric evaluation of Petitioner.  On August 29, 1997, the court struck Petitioner's 1987 conviction for robbery because it was not clear whether he was competent at the time of that trial. The court also struck the enhancement based on the 1987 conviction. After re-sentencing, Petitioner appealed again, and the appellate court affirmed his sentence.

    B.   Proceedings on State Habeas Review

    After re-sentencing, Petitioner filed a state habeas petition raising, among other things, a claim that his 1982 convictions were unconstitutional because he was incompetent to plead guilty in 1982.  The appellate court denied all but the competency claim and issued an order to show cause as to why Petitioner's 1982

United States District Court
For the Northern District of California

convictions should not be set aside.  The Marin County Superior Court held an evidentiary hearing on the order to show cause. After the evidentiary hearing the court denied the petition.

Petitioner filed two more habeas petitions with the state courts:  one with the California Court of Appeal and one with the California Supreme Court.  Both petitions were summarily denied in unpublished orders.

DISCUSSION

I.   Federal Habeas Review

Title 28 U.S.C. § 2254(d) mandates,

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A habeas petitioner is not entitled to relief unless trial error "'had a substantial and injurious effect or influence in determining the jury's verdict.'"  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

II.  Petitioner's Claims for Relief

In his traverse, Petitioner withdraws grounds seven through eleven without comment.

4

A.    Competency and Lack of Competency Hearing in 1995

Petitioner claims that he was denied due process at his 1995 trial because the trial court should have held a competency hearing, and because he was in fact incompetent.  Because before and during Petitioner's trial, sentencing and resentencing no substantial evidence of any legal incompetence arose, this claim fails.

A criminal defendant may not be tried unless he is competent. Godinez v. Moran, 509 U.S. 389, 396 (1993).  The conviction or sentencing of a defendant who is legally incompetent at the time of the proceedings violates due process.  Cacoperdo v. Demosthenes, 37 F.3d 504, 510 (9th Cir. 1994); Pate v. Robinson, 383 U.S. 375, 378 (1966); Drope v. Missouri, 420 U.S. 162, 172 (1975) (granting habeas relief on other grounds).

The test of competence is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding -- whether he has a rational as well as factual understanding of the proceedings against him." Boag v. Raines, 769 F.2d 1341, 1343 (9th Cir. 1985) (citing Dusky v. United States, 362 U.S. 402, 402 (1960), and Chavez v. United States, 656 F.2d 512, 518 (9th Cir. 1981)); see also United States v. Friedman, 366 F.3d 975, 981 (9th Cir. 2004) (upholding finding of incompetence where defendant's paranoid schizophrenia did not affect his understanding of the proceedings against him, but prevented him from working with his attorney to assist in his defense).  The standard for competency to stand trial is lower than the standard for capacity to commit a crime, such

United States District Court
For the Northern District of California

that those with mental deficiencies are not necessarily incompetent to stand trial.  Hoffman v. Arave, 455 F.3d 926, 938 (9th Cir. 2006).

Courts have found sufficient evidence of incompetence in lengthy histories of acute psychosis and psychiatric treatment. See, e.g., Moore v. United States, 464 F.2d 663, 665 (9th Cir. 1972) (defendant repeatedly hospitalized for acute mental illness and hallucinations).  Courts have also found defendants incompetent based on extremely erratic and irrational behavior during the course of the trial.  See, e.g., Tillery v. Eyman, 492 F.2d 1056, 1057-58 (9th Cir. 1974) (defendant screamed throughout nights, laughed at jury, made gestures at bailiff, disrobed in courtroom and butted his head through glass window).

Due process requires a trial court to order a psychiatric evaluation or conduct a competency hearing if the court has a good faith doubt concerning the defendant's competence.  See Cacoperdo, 37 F.3d at 510; see also Davis v. Woodford, 384 F.3d 628, 644 (9th Cir. 2004) (calling a claim of trial court error for failing to conduct a competency hearing a "procedural incompetence claim").  This standard is "clearly established Federal law, as determined by the Supreme Court," within the meaning of 28 U.S.C. § 2254(d)(1). Torres v. Prunty, 223 F.3d 1103, 1107 (9th Cir. 2000) (citing Pate v. Robinson, 383 U.S. 375, 385 (1966)).

A good faith doubt about a defendant's competence arises only if there is substantial evidence of incompetence.  See Cacoperdo, 37 F.3d at 510 (denial of motion for psychiatric evaluation did not render trial fundamentally unfair where petitioner made single

United States District Court
For the Northern District of California

6

conclusory allegation that he suffered from mental illness); <u>see also</u> <u>Davis</u>, 384 F.3d at 645-46 (defendant's decision to wear jail clothing and to refuse to sit at counsel table during most of penalty phase of capital trial was not substantial evidence of incompetence, where defendant acknowledged risks of his behavior and rationally weighed those risks against likelihood he would prejudice himself by having an outburst if he sat at the table). Several factors are relevant to determining whether a hearing is necessary, including evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial. <u>United States v. Loyola-Dominguez</u>, 125 F.3d 1315, 1318 (9th Cir. 1997). Even one of these factors standing alone may, in some circumstances, be sufficient to create a doubt regarding the defendant's competence. <u>Id.</u> at 1318-19 (due process required a hearing to ascertain whether defendant was competent to stand trial where he attempted suicide on eve of trial). When considering a claim that the trial court should have held a competency hearing, the habeas court considers only the information that was before the state trial court. <u>See</u> <u>Amaya-Ruiz v. Stewart</u>, 121 F.3d 486, 489 (9th Cir. 1997); <u>United States v. Lewis</u>, 991 F.2d 524, 527 (9th Cir.), <u>cert. denied</u>, 510 U.S. 878 (1993).

The fact that no one questioned a defendant's competence during extensive pretrial and trial proceedings is entitled to substantial weight but may not be sufficient to overcome significant doubt about his competency raised by other evidence. <u>Odle v. Woodford</u>, 238 F.3d 1084, 1089 (9th Cir. 2001).

The in-court behavior that Petitioner points to as "erratic"

7

(see generally Pet'r's Second Am. Pet. 13:17-15:15) does not raise sufficient doubt as to his competence to stand trial. The fact that he spoke of problems with his attorney, then drifted into problems with jail staff, and then returned to problems with counsel does not compel bona fide doubt as to competence. (See Pet'r's Ex. 153.) Petitioner's religious views, of which he spoke on cross-examination, were not unconventional, nor was speaking of them in connection with a religious organization such as Narcotics Anonymous. (See Resp't's Ex. B, 648:6-24, 651:8-20.) The trial court warned Petitioner to stop talking when he made some speaking objections from the witness stand over the court's admonitions. (See Resp't's Ex. B, 637:9-638:5.) Indeed, Petitioner's objections -- legally sophisticated for a lay person, even if inappropriate -- spoke to his legal competence rather than incompetence.

It was in the context of Petitioner's failure to obey the court's directions concerning his speaking objections that the court said, "I don't want to have to shackle him." (Resp't's Ex. B, 643:28.) The court's remark does not imply that Petitioner's behavior suggested incompetence.

Even being "violent and non-compliant with custody staff instructions" and biting the hand of a jail guard as he was transferred to a safety cell (Pet'r's Ex. 167) does not rise to the level of extremely erratic and irrational behavior. Cf. Tillery, 492 F.2d at 1057-58. Prisoners are not infrequently violent or non-compliant. This incident, even in light of Petitioner's psychiatric history, is insufficient to compel doubt of legal competence.

United States District Court
For the Northern District of California

Petitioner's trial testimony supports a finding that he was competent:

> Q.   (by Petitioner's trial counsel):  [D]id you have any conversations with the officers regarding a request that you were making?
>
> A.   (by Petitioner):  Yes, I asked for a urine test.
>
> Q.   Why was that?
>
> A.   Because I knew I didn't have any drugs in my system, and I knew that that was going to become an issue for my probation.  And I wanted to try to have that matter, you know, cleared up that I didn't have any in my system.
>
> Q.   Okay.  You had not used any drugs before that --
>
> A.   No drugs.
>
> Q.   -- that evening?  All right.
>
> . . . .
>
> Q.   Now, Kethon, I'll tell you, the DA is going to have an opportunity to question you at some point here and, you know, the jury is going to hear all these questions and answers from him.  You've had problems in the past with drugs?
>
> A.   Yes.
>
> Q.   Why should the jury believe you now as opposed to any other time that you've had problems?
>
> A.   Okay.  For one reason Officer DeLeo, he stated, he stated in his testimony that it appeared that I wasn't on drugs.
>
> THE COURT:    Well, I think Yamanoha confirmed that.
>
> THE WITNESS:    Right.  So that's conclusive right there.
>
> Q.   Okay.  Thinking back over this situation right now, that what occurred because I mean, if these drugs, you don't deny that these drugs came out of the pocket of the pants you were wearing that night, right?
>
> A.   Yes.

**United States District Court**
For the Northern District of California

1   Q.   Can you say that you didn't have those and know
2        those were in your pocket that afternoon, and that
         evening, or that you bought them at that time?

3   A.   I had no knowledge whatsoever.

4   Q.   If you knew those were in your pocket would you have
         made contact and been obvious with that guy on the
5        bicycle?

6   A.   No, I wouldn't have if I had those drugs.  If I'd
         have found those drugs period, I would have thrown
7        them away.

8   Q.   Okay.  You didn't make any drug deals --

9   A.   No.

10  Q.   -- or anything that evening?

11  A.   Nothing.

12  Q.   Let me show you . . . Exhibit P.  Can you recognize
         what that is?
13
14  A.   Yes, this is the letter that I received in the mail
         concerning an appointment on the 14th of October.

15  Q.   And who was that with?

16  A.   To see a Richard somebody, a probation officer.  It
         also stated that to be prepared to give a urine
17       sample.

18  Q.   If you had done any drugs that evening, would that
         have been present on October 14th when you went in
19       for your drug sample?

20  A.   Two, three days to leave your system from a urine
         test.
21
22  Q.   Just to clarify something we went over also, showing
         you Defendant's Exhibit Q, can you state what that
23       is?

24  A.   Yes, this is the document that I signed when I left
         the jail house, the report to the probation officer
25       that I had been released and any address and
         everything.

26       . . . .

27  Q.   That was September 9, of '93?

28
                                    10

1

2          A.    '94.

3          . . . .

4          Q.    Okay. . . .  My last question to you, Kethon, did
                 you knowingly possess those drugs that were in your
5                pocket when the police officer stopped you that
                 evening?

6          A.    No, I had no knowledge.

7     (Resp't's Ex. B, 629:23-633:9.)  Petitioner's testimony indicated

8     consultation with his trial counsel in developing a defense.  (This

9     view was further supported by trial counsel himself when he spoke

10    of his relationship with Petitioner, stating, "He and I get along

11    very well. . . .  I spent a lot of time with Kethon specifically."

12    (Pet'r's Ex. 172, 6001:3-5.))  Petitioner's trial testimony did not

13    indicate that he lacked sufficient present ability to consult with

14    his lawyer with a reasonable degree of rational as well as factual

15    understanding of the proceedings against him.  <u>See</u> <u>Boag</u>, 769 F.2d

16    at 1343.  Thus, taken as a whole, Petitioner's conduct, demeanor

17    and testimony during trial did not render unreasonable the state

18    court's failure to hold a competency hearing.

19         As to Petitioner's psychiatric history, the record before the

20    trial and sentencing court indicated that in 1976, Petitioner had

21    been diagnosed as a paranoid schizophrenic and had received

22    supplemental security income on the basis of that diagnosis ever

23    since.  (Pet'r's Ex. 163, 1810.)  It also showed that in 1981

24    Petitioner had been admitted to Marin General Hospital for

25    treatment of acute psychological decompensation and released in

26    "somewhat improved condition" with a prescription for lithium.

27    (Pet'r's Ex. 163, 1811.)  The court also saw that in 1982,

28
                                      11

Petitioner had been taken to a safety cell for evaluation under California Welfare and Institutions Code § 5150, which provides for such custody of "any person, as a result of mental disorder, [who] is a danger" to himself or others.  Cal. Welf. & Inst. Code § 5150. The court was aware of the variety of drugs prescribed to stave off Petitioner's psychotic episodes and of later involuntary commitments under § 5150.

On the other hand, according to the same records before the court, Petitioner had been evaluated by therapists and found "controlled," not "overt[ly] psychotic," "in excellent control," "calm, coherent," and "in control . . . [though] somewhat depressed and paranoid" with no "reported behavior diff[icultie]s." (Pet'r's Ex. 163, 1813-15.)  The court also had before it Petitioner's July, 1994 psychological evaluation, conducted by California Department of Corrections staff psychologist, Dr. Les Carr.  Dr. Carr had found "strong evidence to emphasize Mr. Triggs [sic] potential to exhibit psychotic episodes and related symptoms given minimal stress, for example, dealing with the usual every day problems of his living an existence in the external community." (Pet'r's Ex. 145, 0975.)  Dr. Carr had determined that Petitioner led "a life poorly rooted in reality."  (Id.)  But Dr. Carr had also found "no evidence of organic impairment" and "no indication of a current psychotic disorder."  (Pet'r's Ex. 145, 0975.)

In addition to the evidence discussed above, at resentencing, the court had before it a psychological evaluation of Petitioner by Dr. R.K. McKinzey.  That evaluation reviewed Petitioner's psychiatric history, including diagnoses of a schizophrenic

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

episode, paranoid character disorder in remission, schizoaffective psychosis, paranoid schizophrenia, bipolar manic, cocaine and marijuana dependency, and the personality disorders of schizotypal and antisocial, and noted it "significant for a series of psychotic breaks 1976-1987." (Resp't's Ex. K, 54-58.) But the evaluation also indicated long periods of stability -- e.g., May, 1982 to March, 1983 ("stable" with "no psychotic behavior"); May, 1983 to February, 1985 ("stable"); March, 1986 to May, 1987 ("stability"); March, 1988 to January, 1990 ("stable" and "stabilized"); and June, 1990 to July, 1997 (no "mental health problems" or "psychiatric difficulties" but some "medications"). (Id. at 56-57.) Dr. McKinzey's own mental status examination found Petitioner "anxious, indignant, . . . unhappy" and "hypervigilant." (Id. at 58.) Dr. McKinzey predicted, "If Mr. Triggs' current incarceration continues, he will eventually find himself occasionally on Stelazine."[1] (Id.) None of this renders unreasonable the state court's failure to require a competency hearing.

Neither did Petitioner's conduct at his resentencing hearing, where, for example, the following exchange took place:

> [PETITIONER'S DEFENSE COUNSEL]: Judge, I'm going to just have the Court look at the first page of this August 2nd transcript, and if it's all right, I'm going to have Mr. Triggs explain this to you. . . .
>
> . . . .
>
> THE COURT: All right. . . . I've read it. What did Mr. Triggs want to explain?

---

[1] According to the Food and Drug Administration, Stelazine is a brand name for trifluoperazine hydrochloride, an anti-anxiety, anti-psychotic medication. See http://www.fda.gov/cder/foi/label/2001/11552s112lbl.PDF.

13

**United States District Court**
For the Northern District of California

            THE DEFENDANT:  Okay.  The judge was aware that I
       had those other two convictions, and it also stated that
       he -- cuz he -- my attorney asked the judge what he might
       do with the other matter, and the Judge said I'm not at
       the position to take that into account right now.  And
       also those cases -- it was alleged that they all happened
       within the same week, and I believe the cases should have
       been consolidated.
            Further in 1983 when I caught that sales and this
       case right here, I lacked defense of counsel and the
       Public Defender declared a conflict of interest, and
       that's when you appointed me a court-appointed attorney.
       So it was documented that I was trying to fight that
       burglary right there.

(Resp't's Ex. L, 18:22-19:21.)  Petitioner's argument here is

fairly sophisticated.  He clearly understood the proceedings

against him and had developed -- likely with assistance of counsel

-- a strategy for mitigating his sentence.  A later exchange also

speaks to Petitioner's legal competence:

            THE COURT:  Okay.  So now is the time and place for
       sentencing.  Is there any legal cause why judgment should
       not now be pronounced?

            THE DEFENDANT:  Yes.  I'd just like to state that in
       the doctor's report it states that the drug program might
       be successful and -- in keeping me off drugs, but due to
       my personality, it might not help.  But all my crimes
       that I committed were related to my drug uses or on
       drugs.  So if you eliminated my drug problem the problem
       would be resolved, basically.

            THE COURT:  What is going to eliminate the drug
       problem?

            THE DEFENDANT:  Myself.  Well, if I can get on the
       program and get help that I need to understand myself and
       to learn to stay away from this type of environment, the
       problem will be resolved.  And I've been down learning
       the symptoms and stuff, that I'm afraid and everything,
       but I believe I still need some treatment, though.

            THE COURT:  What have you done?

            THE DEFENDANT:  I've been going to -- I've been
       going to classes.  I've been talking to friends.  They've
       been discouraging me in the way of trying to tell me you
       either want this or you want that, and which one you

                                14

**United States District Court**
For the Northern District of California

want.  You want to be stuck here all the time, or you
want your freedom?

(Resp't's Ex. L, 31:2-32:4.)  Again, Petitioner's argument here was

a competent attempt to mitigate his sentence.  It clearly

demonstrates his factual and rational understanding of the

proceedings.  It also suggests again that he was working with his

attorney and assisting in his defense.  Petitioner's behavior

therefore raised no doubt as to his legal competence at

resentencing.

Finally, after resentencing, the court queried Petitioner

twice on his understanding of the proceedings.

> THE COURT:  You do have the right to appeal the
> judgment of this Court.  If you think the Court has made
> an error in sentencing you, you can appeal by sending a
> written notice of appeal to the Court of Appeal, and you
> must do that within 60 days of today's date.

> So do you understand that?

> THE DEFENDANT:  Yes.

> THE DEFENDANT:  And do you understand that you do
> have a lifetime parole?

> THE DEFENDANT:  Yes.

(Resp't's Ex. L, 40:10-19.)  In the context of all the information

on Petitioner's mental capabilities, the above arguments and

affirmations speak to his competence.  It was not unreasonable to

assume that Petitioner was competent to be resentenced.

Further, no one involved in the proceedings against Petitioner

questioned his competence.  See Odle, 238 F.3d at 1089; Hernandez

v. Ylst, 930 F.2d 714, 718 (9th Cir. 1991) (finding significant

that the trial judge, government counsel and Hernandez's own

attorney did not perceive cause to believe Hernandez incompetent).

United States District Court

For the Northern District of California

That neither the prosecutor nor the court saw any need for a competency hearing suggests that Petitioner seemed competent. That Petitioner's trial counsel did not raise the issue of his competence suggests so still more strongly. See Torres, 223 F.3d at 1109 ("[A defendant]'s defense counsel [i]s in the best position to evaluate [the defendant]'s competence and ability to render assistance.").

These parties' tacit affirmation of Petitioner's competence, coupled with his seemingly rational behavior, demeanor and testimony during the proceedings, overcame any doubts as to Petitioner's competence that may have been raised by his psychiatric history. The court was not compelled to find that any of the mental health problems in Petitioner's past were impeding his present ability to consult with his counsel and understand the proceedings against him.

The trial court was aware that, although sometimes Petitioner was in need of acute psychiatric treatment, he also was capable of functioning normally much of the time. That he seemed competent to all involved in the proceedings before and during his trial, sentencing and resentencing made it reasonable for the trial court to presume that Petitioner at the time was enjoying one of his periods of relative stability.

In his traverse, Petitioner argues that Supreme Court and Ninth Circuit precedent shows that psychiatric evidence comparable to Petitioner's should have raised doubt of Petitioner's legal competence. However, the cases upon which Petitioner relies are inapposite to his circumstances. For example, in Rhay v. White,

16

385 F.2d 883 (9th Cir. 1967), the elements suggesting White might have been incompetent included "White's attitude, actions and other psychological aspects not shown by the record, when coupled with and viewed in the light of some of the testimony brought out on the trial as to his history of chronic mental disturbances, paranoid traits, violent behavioral explosions and previous institutional diagnoses." Id. at 884.   In trial testimony, a psychiatrist judged White so paranoid as to be unable to trust anyone.   Id.   Before the district court, another psychiatrist who had observed White during trial deemed his rigidity throughout to indicate that he was barely in control of himself.   Id.   From talking with White, the same psychiatrist concluded that White had become imbued with hatred for the prosecutor -- not in connection with the trial, but because White believed the prosecutor was sometimes laughing at him.   Id. White's trial counsel testified as to difficulty communicating with him.   Id.   Several times counsel had to request a special recess because White had said "'he couldn't take it anymore.'"   Id.   Trial counsel had informed the judge in chambers that a psychiatrist observing White in court and checking up on him in the evening believed White was close to a psychotic break.   Id.   Counsel also informed the judge that the defense had noticed White's deterioration over the previous few days.   Id.   In light of such circumstances, the Ninth Circuit held that the district court was entitled to conclude that due process demanded a competency hearing.   See id. at 886.   Petitioner's circumstances are not comparable to those in White.

Petitioner also cites Pate, 383 U.S. 375.   In Pate, a brick

17

had fallen on the defendant Robinson's head when he was a child. After this injury, Robinson's conduct had become increasingly bizarre, eventually leading to hospitalization for audio and visual hallucinations and acute paranoia.  See id. at 379-80.  After his release, his "irrational episodes became more serious."  Id. at 380.  He argued violently with his wife and tried to burn all her clothes.  Id.  After separating from her, he shot and killed his eighteen-month-old son and attempted suicide twice -- first by shooting himself in the head and then by trying to drown himself. Id.  After serving a sentence in prison for killing his son, Robinson seemed uncontrollably violent, in turn beating people up and getting beaten up.  See id. at 381-82.  Finally, in the restaurant where she worked, he shot and killed the woman he was living with.  Id. at 382.

Four defense witnesses testified that Robinson was insane. Id. at 383.  The prosecution rebutted by stipulating that a behavior expert would testify on the basis of a pretrial examination that "Robinson knew the nature of the charges against him and was able to cooperate with counsel."  Id.  However, because the stipulation lacked a finding of sanity, the prosecutor advised the court,

> [W]e should have Dr. Haines' testimony as to his opinion whether this man is sane or insane.  It is possible that the man might be insane and [still] know the nature of the charge or be able to cooperate with his counsel.  I think it should be in evidence, your Honor, that Dr. Haines' opinion is that this defendant was sane when he was examined.

Id. at 383-84.  But the court replied that there was enough in the record as it stood, and therefore the expert's testimony was not

18

needed.  Id. at 384.  In summation, Robinson's counsel emphasized, "'[O]ur defense . . . is as to the sanity of the defendant at the time of the crime and also as to the present time.'"  Id. Nevertheless, after the defense's closing argument, the court found Robinson guilty and sentenced him to life in prison.  Id. Assessing Robinson's petition for writ of habeas corpus, the U.S. Supreme Court ruled "that the evidence introduced on Robinson's behalf entitled him to a hearing" on the issue of whether he was competent to stand trial.  Id. at 385.  Again, Petitioner's situation is not comparable.

Petitioner also relies on Odle, a case in which the "personal observations" of Odle by those interacting with him at trial could not "overcome the significant doubt about Odle's competence raised by the clinical evidence."  238 F.3d at 1087.  But the clinical evidence in Odle's case -- Odle's temporal lobectomy and radical behavior change thereafter; doctors' testimony that Odle probably suffered from organic brain disorder; a psychiatrist's testimony that Odle's injury could cause seizure disorders affecting behavior; and electroencephalogram results revealing brain abnormalities consistent with an epileptic seizure disorder that, according to a doctor's testimony, would probably cause behavioral disturbances beyond Odle's control -- was likewise of an order distinctly more severe than that before the court in Petitioner's case.

Petitioner further relies on Drope, in which the Supreme Court held, "Although a defendant's demeanor during trial may be such as to obviate the need for extensive reliance on psychiatric

19

United States District Court
For the Northern District of California

prediction concerning his capabilities, . . . this reasoning offers
no justification for ignoring the uncontradicted testimony of a
history of pronounced irrational behavior."  420 U.S. at 179
(alteration, citation and ellipsis omitted).  In <u>Drope</u>, the
evidence of such a history included Drope's trial counsel's request
for a continuance in part because Drope -- accused of raping his
own wife -- was "not a person of sound mind" and should "have a
further psychiatric examination before the case should be forced to
trial."  <u>Id.</u> at 165.  Drope's psychiatric report, also before the
trial court, diagnosed him with "(1) Sociopathic personality
disorder, sexual perversion[,] (2) Borderline mental deficiency
[and] (3) Chronic Anxiety reaction with depression."  <u>Id.</u> n.1.
Drope's wife testified that when Drope was upset he would roll down
the stairs and that he had tried to choke her to death the night
before his trial began.  <u>Id.</u> at 166.  Finally, Drope intentionally
shot himself after the first day of trial.  <u>Id.</u>  Petitioner's
conduct and history, unlike Drope's, did not rise to the level of
pronounced irrationality compelling a doubt of his competence to
stand trial.

     For the above-stated reasons, the state court's failure to
hold a competency hearing was not unreasonable.  Therefore, the
Court denies Petitioner's claim for relief on these grounds.  For
the same reasons, the Court denies Petitioner's habeas petition to
the extent it is based on the grounds that he actually was
incompetent.

B.   Validity of Petitioner's 1982 Convictions

Petitioner challenges the constitutionality of the convictions used to enhance his current sentence, asserting that he was incompetent and denied effective assistance of counsel during the 1982 proceedings.  Respondent argues that because Petitioner is no longer in custody on his prior convictions, he may no longer challenge them.

It is true that a federal writ of habeas corpus is only available to persons "in custody" at the time the petition is filed.  See 28 U.S.C. §§ 2241(c), 2254(a); Carafas v. LaVallee, 391 U.S. 234, 238 (1968).  But, a habeas petitioner challenging the validity of an expired conviction that he maintains is being used as a predicate or enhancement to his current confinement or sentence satisfies the custody requirement even if he is no longer in custody for the prior conviction.  See Lackawanna County Dist. Attorney v. Coss, 532 U.S. 394, 401-02 (2001); Maleng v. Cook, 490 U.S. 488, 493-94 (1989); Zichko v. Idaho, 247 F.3d 1015, 1019-20 (9th Cir. 2001) (holding that "a habeas petitioner is in custody for the purposes of challenging an earlier, expired rape conviction, when he is incarcerated for failing to comply with a state sex offender registration law[,] because the earlier rape conviction is a necessary predicate to the failure to register charge") (internal quotation marks omitted).  Such a challenge is construed as an attack on the petitioner's current confinement or sentence.  See Lackawanna, 532 U.S. at 401-02 (challenge to constitutionality of 1958 expired conviction construed as challenge to current 1978 sentences enhanced by 1958 conviction); Feldman v.

United States District Court
For the Northern District of California

Perrill, 902 F.2d 1445, 1448-49 (9th Cir. 1990) (challenge to expired state court sentence used to deny parole in current federal sentence construed as attack on federal sentence).  The federal courts are required to construe liberally a challenge to a prior conviction.  See Brock v. Weston, 31 F.3d 887, 889-91 (9th Cir. 1994) (challenge to expired 1974 assault conviction must be construed as challenge to current civil confinement predicated upon prior conviction); see also Allen v. Oregon, 153 F.3d 1046, 1048-49 (9th Cir. 1998) (challenge to prior state convictions must be construed as collateral attack on current federal sentence enhanced by prior state convictions).

Petitioner is currently serving a sentence for his 1995 offense.  Because he is challenging his 1982 convictions as an attack on his 1995 sentence, he is deemed to be "in custody" for the 1982 offenses for the purposes of § 2254.  See Lackawanna, 532 U.S. at 401-02; Maleng, 490 U.S. at 494.  His 1987 conviction was stricken, however, so he is not deemed to be in custody for that conviction, and it may not be challenged.

Petitioner's challenge to the constitutionality of his 1982 convictions fails for a different reason.  His challenge rests on the grounds that he was denied due process of law and effective assistance of counsel.

The Supreme Court held in Lackawanna:

> Once a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid.  If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the

United States District Court
For the Northern District of California

1  enhanced sentence through a petition under § 2254 on the
2  ground that the prior conviction was unconstitutionally
   obtained.

3  532 U.S. at 403-04; see also United States v. Martinez-Martinez,

4  295 F.3d 1041, 1043-44 (9th Cir. 2002) (bar against collateral

5  attacks on prior convictions also applies where sentencing court

6  declined to reduce sentence based on circumstances of prior

7  conviction).

8      The only exception to this rule is for a claim that the prior

9  conviction was unconstitutional because there was a failure to

10 appoint counsel in violation of the Sixth Amendment right to

11 counsel as set forth in Gideon v. Wainwright, 372 U.S. 335 (1963).

12 See Lackawanna, 532 U.S. at 404; Daniels v. United States, 532 U.S.

13 374, 382 (2001).

14     Petitioner unsuccessfully appealed and collaterally attacked

15 his 1982 convictions in the California Court of Appeal and

16 California Supreme Court.  Therefore, his 1982 convictions are no

17 longer open to direct or collateral attack.  In addition, the

18 Lackawanna exception does not apply.  Petitioner does not allege

19 that there was a failure to appoint counsel in violation of the

20 Sixth Amendment right to counsel as set forth in Gideon.

21 Petitioner was represented by counsel during the 1982 proceedings;

22 his claim is one for ineffective assistance of that counsel.

23     Petitioner attempts to distinguish Lackawanna by noting that

24 the Supreme Court's holding was premised on a need "for finality of

25 convictions and ease of administration."  532 U.S. at 402.

26 Petitioner argues that the State waived any interest in the

27 finality of the prior convictions by failing to object to the state

28

23

court's review of Petitioner's 1982 conviction and that ease of administration is not an issue because the records of state court trials are available and accessible.  Petitioner cites no authority to support this argument.

Petitioner further maintains that <u>Lackawanna</u> is inapplicable because this petition is, as a practical matter, Petitioner's first and only opportunity for review of his 1982 convictions. Petitioner relies on Part III-B of the <u>Lackawanna</u> opinion, in which Justice O'Connor, joined by only two additional Justices, observed the following:

> [A]nother exception to the general rule precluding habeas relief might be available. . . .  The general rule we have adopted here . . . reflects the notion that a defendant properly bears the consequences of either forgoing otherwise available review of a conviction or failing to successfully demonstrate constitutional error. It is not always the case, however, that a defendant can be faulted for failing to obtain timely review of a constitutional claim.  For example, a state court may, without justification, refuse to rule on a constitutional claim that has been properly presented to it. Alternatively, after the time for direct or collateral review has expired, a defendant may obtain compelling evidence that he is actually innocent of the crime for which he was convicted, and which he could not have uncovered in a timely manner.
> In such situations, a habeas petition directed at the enhanced sentence may effectively be the first and only forum available for review of the prior conviction.

532 U.S. at 405-06 (citations omitted).  Because a majority of the Supreme Court did not recognize this additional exception, it does not represent controlling law.  But, even if the Court were to recognize such an exception, it would not apply to Petitioner's case.  As Petitioner admits, he challenged the validity of his 1982 convictions in the course of his challenges to his three-strikes conviction and sentence.  (Pet'r's Reply at 53.)  He received an

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

evidentiary hearing on those convictions.  The Marin County
Superior Court and the California State Court of Appeal have each
determined that Petitioner's argument regarding the
constitutionality of his 1982 convictions lacks merit, and have
denied his multiple petitions for habeas corpus.  (Pet'r's Second
Am. Pet. 7-8.)  Because these courts did not refuse to rule on
Petitioner's claims and there is no compelling evidence of his
innocence, Petitioner cannot be found to fall within the terms of
the further exception contemplated by Justice O'Connor.

    Finally, Petitioner maintains that it would be fundamentally
unfair to apply Lackawanna retroactively to bar review of the 1982
convictions.[2]  Petitioner correctly notes that Lackawanna was
decided after he filed his initial petition with this Court.
However, Petitioner has cited no authority for the proposition that
the Court may apply the rule of decision as it existed at the time
the petition was filed.  Indeed, this is contrary to the principle
that "a court is to apply the law in effect at the time it renders
its decision, unless doing so would result in manifest injustice or
there is statutory direction or legislative history to the
contrary."  Bradley v. Sch. Bd. of Richmond, 416 U.S. 696, 711
(1974).  Lackawanna settled an unresolved issue of law concerning
the limits of the court's power on habeas review.  There is no
basis for departing from the rule in Bradley, and Lackawanna
therefore prevents Petitioner from challenging the validity of his

_____

[2] As of the date of this order, neither the United States
Supreme Court nor the Ninth Circuit has decided whether Lackawanna
should be retroactively applied.

25

1  1982 convictions.[3]

2       C.   Other Trial Court Errors

3            1.   Errors Related to Admission of Evidence Regarding
                  Prior Convictions

4            a.   Denial of Adequate Opportunity to Investigate
5                 Petitioner's Competency at the Time of His
                  Prior Convictions

6

7       Petitioner argues that the trial court in 1995 erroneously and

8  prejudicially denied his trial counsel an adequate opportunity to

9  investigate and present evidence about Petitioner's competency at

   the time of his 1982 and 1987 prior convictions.
10
        On May 9, 1995, Petitioner moved to strike his prior
11
   convictions.  In furtherance of that motion, Petitioner requested
12
   funds to hire an expert to analyze his medical records to determine
13
   if he was competent at the time of his prior convictions.  (Pet'r's
14
   Ex. 163, 1809.)  Petitioner requested $1000, but the trial court
15
   granted him only $500.  (Pet'r's Ex. 176.)  At an August 1, 1995
16
   sentencing hearing, the trial court denied Petitioner's request for
17
   a continuance to further develop his motion to strike.  (Pet'r's
18
   Ex. 177, 4950.)  The court rejected counsel's reasons for seeking
19
   the continuance: that the court's grant of only $500 forced him to
20
   locate another expert than the one originally located and that it
21
   took over a week to find another expert.  Id. at 4951-52.  The
22
   California Court of Appeal, the highest state court to address the
23

24  _____

25      [3]Even if Lackawanna did not bar Petitioner's challenges, his
    substantive claims of invalidity fail as well.  Petitioner has not
26  made a sufficient showing that he was incompetent during the 1982
    proceedings or that his counsel was ineffective.  Plaintiff
27  ultimately received a competency hearing and was found to be
    competent at the time of the 1982 proceedings.

28
                                    26

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

merits of Petitioner's claim in a reasoned decision, affirmed.
(Resp't's Ex. C, 7.)

Indigent defendants do not have the right to receive funds to hire the psychiatrist of their choice. <u>Pawlyk v. Wood</u>, 248 F.3d 815, 823 (9th Cir. 2001) (citing <u>Ake v. Oklahoma</u>, 470 U.S. 68, 83 (1985)).  The state appellate court concluded that the amount of funds granted by the trial court was sufficient because Petitioner's counsel admitted that he was able to hire an expert, just not the one he had chosen. (Resp't's Ex. C, 7.)  The court also concluded that the continuance was properly denied because Petitioner had been given enough time for his expert to analyze the medical records relevant to Petitioner's motion. (<u>Id.</u>)

The state court's analysis was not an unreasonable application of federal law.  In any event, the 1987 conviction was eventually stricken, and Petitioner's argument that the admission of evidence of his 1987 conviction had a prejudicial impact on his credibility is not persuasive.  In a later evidentiary hearing, the state court found that Petitioner was competent in 1982.  Accordingly, this claim of trial court error does not warrant habeas relief.

> b.   Confrontation Clause Violation Related to
>      Evidence of 1982 Convictions

Petitioner claims a Confrontation Clause violation in admission of the 1982 preliminary hearing transcript to prove the facts of his 1982 convictions.  The evidence was admitted on the issue of whether Petitioner's prior convictions qualified as strikes under California's three-strikes law.  Petitioner contends that the transcript could only be introduced if he had a motive and

27

United States District Court
For the Northern District of California

opportunity to cross-examine the witnesses in 1982 and the prosecution made a showing that the witnesses were unavailable.

Petitioner has not established that the admission of the evidence was erroneous. Under California law, the trier of fact may look to the entire record to determine the substance of the prior conviction. See People v. Guerrero, 44 Cal. 3d 343, 355 (1988). People v. Reed, 13 Cal. 4th 217, 229-30, cert. denied, 519 U.S. 873 (1996), expanded Guerrero to hold that preliminary hearing transcripts could be used to prove that a prior conviction was for a serious felony within the meaning of California's three strikes law (California Penal Code §§ 667 and 1192). The Reed court held that the testimony recorded in the preliminary hearing transcript could be admitted to prove the substance of the prior conviction under California's hearsay exception for former testimony, even though that hearsay exception required that the witness be unavailable. Id. The witnesses who testified at the preliminary hearing "were legally unavailable because, under the rule announced in [Guerrero], the prosecution was precluded from presenting any evidence outside the record of conviction to prove the circumstances of the prior crime." Id. at 225 (emphasis in original). Accordingly, the Confrontation Clause was not violated by the use of the preliminary hearing testimony.[4] Id. at 228.

Petitioner also argues that he was not allowed to confront and

_____

[4]Petitioner may not rely on the Supreme Court's decision in Crawford v. Washington, 541 U.S. 36 (2004), which narrowed the realm of exceptions to the right of confrontation. Crawford does not apply retroactively in collateral proceedings such as this one. Whorton v. Bockting, __ U.S. __, 127 S. Ct. 1173 (2007).

**United States District Court**
For the Northern District of California

cross-examine the witnesses even at the 1982 hearing because he was hidden behind a screen. However, the screen was used at his attorney's request to prevent the witnesses from viewing Petitioner until his counsel had cross-examined them. At the conclusion of each cross-examination, when the witness was asked to identify Petitioner, the screen was removed. Accordingly, these facts do not support his Confrontation Clause claim.

c.    Failure to Redact 1982 Preliminary Hearing Transcript

Petitioner claims the trial court erred in admitting the 1982 preliminary hearing transcript without redacting from it prejudicial information such as (1) references to Petitioner's juvenile record, (2) Petitioner's psychiatric conservatorship and (3) comments by the judge about Petitioner's behavior.

Petitioner has failed to demonstrate that he was prejudiced by the trial court's failure <u>sua sponte</u> to redact the transcript. A state court's procedural or evidentiary ruling is not subject to federal habeas review unless the ruling violated federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process. <u>Walters v. Maass</u>, 45 F.3d 1355, 1357 (9th Cir. 1995). The due process inquiry on federal habeas review is whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair. <u>See</u> <u>id.</u>; <u>Colley v. Sumner</u>, 784 F.2d 984, 990 (9th Cir.), <u>cert. denied</u>, 479 U.S. 839 (1986).

The prosecution relied on the transcript to establish that the

29

**United States District Court**
For the Northern District of California

1982 burglary and attempted burglary convictions qualified as strikes because they involved inhabited dwellings. Even if the allegedly prejudicial facts listed by Petitioner were redacted from the transcript, the jury would have still been able to determine that the 1982 burglary and attempted burglary convictions involved inhabited dwellings. Because Petitioner has not established that the admission of this evidence rendered his trial fundamentally unfair, this claim of trial court error does not warrant habeas relief.

d.   Cross-Examination Concerning Dismissed Charges

Petitioner argues that the 1995 trial court erroneously and prejudicially allowed the prosecution to cross-examine him about criminal charges that had been dismissed in connection with his 1982 and 1987 priors. Specifically, the court permitted the prosecutor to question Petitioner about whether he received a benefit for pleading guilty to the 1982 burglaries. (Pet'r's Ex. 172, 5591.) The court then allowed the prosecutor to ask Petitioner whether "as a result of that disposition two other burglaries were dismissed." Id. at 5592. Finally, the court permitted the prosecutor to ask Petitioner about charges that had been dropped in connection with Petitioner's 1987 convictions for robbery and the sale of drugs. Id.

Again, Petitioner has not established that the cross-examination rendered his trial fundamentally unfair. When viewed in light of Petitioner's overall criminal record, the cross-examination likely had a de minimis impact on the jury's evaluation of his credibility or criminal predisposition. Accordingly, this

30

claim of trial court error does not warrant habeas relief.

     e. Double Jeopardy

  Petitioner argues that his right to be free from double jeopardy was violated when his sentence was enhanced based upon his 1982 convictions.

  To support his claim, Petitioner cites <u>Monge v. California</u>, 524 U.S. 721, 734 (1998).  In <u>Monge</u>, the Supreme Court held that increasing a convict's non-capital sentence based on a prior conviction does not violate the double jeopardy clause of the Fifth Amendment.  <u>See</u> <u>id.</u> at 734.  The case offers no support for Petitioner's claim.

  Moreover, enhanced punishment imposed for a later offense "is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes, but instead as a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one."  <u>Witte v. United States</u>, 515 U.S. 389, 400 (1995) (internal quotation marks omitted).  Therefore, the use of prior convictions to enhance sentences for subsequent convictions does not violate the Fifth Amendment's double jeopardy clause.  <u>See</u> <u>Spencer v. Texas</u>, 385 U.S. 554, 560 (1967) (upholding use of prior convictions to enhance sentences for subsequent convictions even if in a sense defendant must relitigate in sentencing proceeding conduct for which he was already tried).

  Accordingly, Petitioner's double jeopardy claim does not merit habeas relief.

    2. Recusal of the Trial Judge

  In 1994, Petitioner was convicted for selling cocaine.  As

**United States District Court**
For the Northern District of California

31

part of Petitioner's probation, the judge imposed a search condition.[5]  (Pet'r's Ex. 147, 6044-46.)  The judge who imposed the search condition also presided over Petitioner's 1995 trial. Before the 1995 trial, counsel moved to suppress the cocaine by arguing that Petitioner was not subject to the search condition because he had never expressly consented to it.  (Pet'r's Ex. 160, 1279-83.)  Petitioner argues that the judge should have recused herself on the ground that she was being called upon to decide the validity of a condition that she had imposed.

Petitioner has failed to establish error or prejudice.  Under federal law, a judge's alleged bias, to be disqualifying, must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from participation in the case.  See United States v. Grinnell Corp., 384 U.S. 563, 583 (1966).  Thus, the moving party must demonstrate that the alleged bias is personal, as opposed to judicial, in nature and origin.  See United States v. Zagari, 419 F. Supp. 494, 501 (N.D. Cal. 1976).

The question presented by Petitioner's motion to suppress was a legal issue: whether Petitioner's express consent to the conditions of probation at sentencing or in a written document was required for the conditions to be valid.  Petitioner's claim fails under federal law because he has not alleged that the judge had

---

[5] The condition required Petitioner "to submit [him]self to search and seizure of [his] person, vehicle, residence, or any property under [his] control at any time of the day or night by any probation officer or peace officer with or without probable cause, and without a warrant."

United States District Court
For the Northern District of California

bias from an extrajudicial source.  See Zaqari, 419 F. Supp. at 501.  Additionally, Petitioner has not shown that another judge would have decided differently; he has not cited any authority for the proposition that his consent was necessary.  Therefore, this claim of trial court error does not warrant habeas relief.

3.   Cumulative Error

Petitioner contends that the cumulative effect of the above errors resulted in the denial of his right to a fair trial.  In some cases, although no single trial error is sufficiently prejudicial to warrant reversal, the cumulative effect of several errors may prejudice a defendant to such a degree that his conviction must be overturned.  Alcala v. Woodford, 334 F.3d 862, 893-95 (9th Cir. 2003) (reversing conviction where multiple constitutional errors hindered defendant's efforts to challenge every important element of proof offered by prosecution). Cumulative error is more likely to be found prejudicial when the government's case is weak.  See, e.g., Thomas v. Hubbard, 273 F.3d 1164, 1180 (9th Cir. 2002).  However, where there is no single constitutional error, nothing can accumulate to the level of a constitutional violation.  See Mancuso v. Olivarez, 292 F.3d 939, 957 (9th Cir. 2002); Fuller v. Roe, 182 F.3d 699, 704 (9th Cir. 1999); Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996).  As set forth above, Petitioner has failed to establish any constitutional error in the underlying state court proceeding.  Therefore, his claim of cumulative error does not warrant habeas relief.

**United States District Court**

For the Northern District of California

D.    Ineffective Assistance of Trial Counsel

Petitioner claims that he was denied effective assistance of trial counsel on a number of grounds.  Many of his challenges to counsel's performance overlap with his claims of trial court error discussed above.

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel.  <u>Strickland</u>, 466 U.S. at 686.  The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result.  <u>Id.</u>

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, a petitioner must establish two things.  First, he must establish that counsel's performance was deficient, that is, that it fell below an "objective standard of reasonableness" under prevailing professional norms.  <u>Id.</u> at 687-88.  Second, he must establish that he was prejudiced by counsel's deficient performance, that is, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Id.</u> at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  <u>Id.</u>  However, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  <u>Id.</u> at 690.  The <u>Strickland</u> framework for analyzing ineffective assistance of counsel claims is

United States District Court
For the Northern District of California

considered to be "clearly established Federal law, as determined by the Supreme Court of the United States" for the purposes of 28 U.S.C. § 2254(d) analysis.  See Williams v. Taylor, 529 U.S. 362, 404-08 (2000).

It is unnecessary for a federal court considering a habeas ineffective assistance claim to address the prejudice prong of the Strickland test if the petitioner cannot even establish incompetence under the first prong.  See Siripongs v. Calderon, 133 F.3d 732, 737 (9th Cir. 1998).  Similarly, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as the result of the alleged deficiencies.  See Strickland, 466 U.S. at 697; Williams v. Calderon, 52 F.3d 1465, 1470 & n.3 (9th Cir. 1995) (approving district court's refusal to consider whether counsel's conduct was deficient after determining that petitioner could not establish prejudice), cert. denied, 516 U.S. 1124 (1996).

1.    Counsel's Failure to Investigate and Raise the Issue of Petitioner's Competency in 1995

Petitioner contends that trial counsel was ineffective for failing adequately to investigate and raise with the trial court the issue of Petitioner's competency at the time of his 1995 trial and sentencing, and at his resentencing.

A defense attorney has a general duty to make reasonable investigations or to make a reasonable decision that particular investigations are unnecessary.  See Strickland, 466 U.S. at 691; Turner v. Duncan, 158 F.3d 449, 456 (9th Cir. 1998).  Strickland directs that "'a particular decision not to investigate must be

United States District Court
For the Northern District of California

directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'" Silva v. Woodford, 279 F.3d 825, 836 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 491); see Cacoperdo v. Demosthenes, 37 F.3d 504, 508 (9th Cir. 1994) (decision whether to introduce medical evidence largely question of professional judgment), cert. denied, 514 U.S. 1026 (1995).

As discussed above, the test for competence to stand trial is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding -- whether he has a rational as well as factual understanding of the proceedings against him." Boag, 769 F.2d at 1343.

Petitioner contends that trial counsel's investigation was inadequate because he did not obtain copies of Petitioner's mental health records. However, Petitioner does not discuss what sort of additional information trial counsel would have uncovered by examining more records. Based on his declarations, trial counsel already knew a great deal about Petitioner's past and present mental capacity. Despite this knowledge, counsel did not seek expert evaluation of Petitioner's current mental capacity because, as counsel stated, "It was my judgment that I did not need to have Mr. Triggs examined by a mental health expert to determine whether he was mentally competent to stand trial or be sentenced." (Pet'r's Ex. 235, 5.) Counsel's judgment carries significant weight, because, as noted above, "[d]efense counsel will often have the best-informed view of the defendant's ability to participate in his defense." Medina v. California, 505 U.S. 437, 450 (1992).

36

In light of the heavy deference the Court must afford counsel's judgments under Strickland, the Court finds that counsel's investigation into Petitioner's competency was sufficient to support a reasonable professional judgment that no further investigation was warranted.  See Strickland, 466 U.S. at 491.

Petitioner also claims that trial counsel was ineffective for failing to raise his competency with the trial court.  Petitioner argues that had the court held a competency hearing, there was a reasonable likelihood that it would have determined that he was incompetent to stand trial or be sentenced.

Based on what he knew about Petitioner, Petitioner's counsel could have reasonably believed that Petitioner was competent. Therefore, counsel could have reasonably concluded that a competency hearing would have been futile.  See James v. Borg, 24 F.3d 20, 27 (9th Cir.1994) ("[F]ailure to make a futile motion does not constitute ineffective assistance of counsel.").

The cases Petitioner cites in support of his arguments are inapposite.  In Douglas v. Woodford, the court found Douglas' attorney's performance deficient for, among other things, failing adequately to investigate a mental health defense at the guilt phase of the trial.  316 F.3d 1079 (9th Cir. 2003).  Douglas' trial counsel had several doctors examine him.  Id. at 1085.  One of them had suggested further tests, but Douglas had refused to participate.  Id.  The court found counsel deficient for failing to discover a doctor who had conducted a similar evaluation of Douglas when he was on trial for a prior offense.  Id.  The court held that "'if a client forecloses certain avenues of investigation, it

37

**United States District Court**
For the Northern District of California

arguably becomes even more incumbent upon trial counsel to seek out and find alternative sources of information and evidence, especially in the context of a capital murder trial.'"  Id. at 1086 (quoting Silva v. Woodford, 279 F.3d 825, 847 (9th Cir.), cert. denied, 537 U.S. 942 (2002)).  Here, Petitioner's counsel chose not to pursue additional sources of information relating to Petitioner's competency because, unlike Douglas' counsel, he thought his client was competent.

In United States v. Howard, Howard plead guilty one hour before his trial was to begin while he was under the influence of a prescribed narcotic painkiller.  381 F.3d 873, 876 (9th Cir. 2004). Howard argued that counsel was constitutionally ineffective for permitting him, while incompetent, to acquiesce in the plea agreement he had seen for the first time just before he agreed to plead guilty.  Id. at 875.  The court held that the late timing of the proffer of the plea, combined with Howard's uncontroverted allegations of drug use, justified an evidentiary hearing to determine whether counsel was ineffective.  Id. at 881.  This case is inapposite.

Petitioner's counsel's performance did not fall below an "objective standard of reasonableness" under prevailing professional norms.  Strickland, 466 U.S. at 687-88.  Accordingly, this claim of ineffective assistance of counsel does not warrant habeas relief.

> 2.   Counsel's Failure to Investigate or Challenge Petitioner's 1982 and 1987 Convictions

Petitioner contends that counsel rendered ineffective

38

assistance by failing (1) adequately to investigate and present evidence about Petitioner's competence at the time of his 1982 and 1987 prior convictions; and (2) to challenge Petitioner's prior convictions on the grounds that he should have had a competency hearing.  However, Petitioner has not demonstrated that he was prejudiced by these alleged deficiencies.

> a.   Availability of Collateral Challenge

At the time of Petitioner's 1995 trial, California law was unsettled about whether Petitioner could have challenged his prior convictions on the grounds he now claims.  In 1994, the United States Supreme Court decided Custis v. United States, 511 U.S. 485, 493-97 (1994), holding that, in the context of a federal sentencing proceeding, the Constitution does not require that a defendant be permitted to attack collaterally the constitutionality of a prior state court conviction used to enhance the federal sentence.  The only exception to this rule is a challenge on the grounds of failure to appoint counsel as required by the Sixth Amendment.[6] Id.  In 1997, after Petitioner's 1995 trial, California adopted the Custis rule in all non-capital cases.  Garcia v. Superior Court, 14 Cal. 4th 953, 956, 963-65 (1997).

In Lockhart v. Fretwell, 506 U.S. 364, 366 (1993), the Supreme Court held that a defendant suffers no cognizable prejudice where counsel fails to make a legal argument that was supported by legal authority at the time of the trial, but subsequently overruled.

---

[6]Lackawanna, discussed above in connection with Petitioner's present challenge to the validity of his 1982 convictions, extended Custis to apply to federal habeas proceedings.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

Even though counsel could have challenged Petitioner's prior convictions at the time of his trial, this type of challenge was no longer permitted after <u>Garcia</u>.   Accordingly, Petitioner cannot demonstrate prejudice from his counsel's failure to challenge the 1982 convictions.

> b.   Petitioner's Competency Claim

Petitioner eventually received an evidentiary hearing regarding whether he was competent at the time of his 1982 conviction and was found to have been competent.   On remand, the trial court struck his 1987 conviction.   Petitioner has not established a reasonable probability that the result of his 1995 trial would have been different had his 1995 trial counsel challenged his competency at his 1982 and 1987 proceedings. Accordingly, this claim of ineffective assistance of counsel does not warrant habeas relief.

> c.   Petitioner's Conflicted Counsel Claim

Petitioner also claims that counsel was ineffective for failing to challenge his 1982 and 1987 prior convictions on the grounds that the Marin County Public Defender did not provide constitutionally effective assistance at those times because it had a conflict of interest.   This claim lacks a showing both of merit and of prejudice.

> 3.   Counsel's Failure to Object to Evidence Proving
> Petitioner's Prior Convictions

> a.   Failure to Raise Confrontation Clause Claim

Petitioner contends that counsel was ineffective because counsel failed to argue that the admission of the 1982 preliminary

United States District Court
For the Northern District of California

hearing transcript to prove Petitioner's prior strikes violated his right under the Confrontation Clause.  As discussed above, Petitioner asserts that the prosecution made no showing that the witnesses from the 1982 hearing were not available and that Petitioner had no real opportunity or motive in 1982 to cross-examine the preliminary hearing witnesses about a fact that was not an element of the offenses at the time but that qualified the 1982 prior convictions as strikes in 1995.

Petitioner fails to demonstrate that counsel's inaction in this respect prejudiced Petitioner.  On direct appeal, the state court rejected Petitioner's Confrontation Clause claim, finding his case indistinguishable from Reed, 13 Cal. 4th 217.  As discussed above, under Reed such transcripts may be admitted.  See id. at 225.

Because the state court of appeal has rejected Petitioner's argument, Petitioner has failed to establish that, had counsel raised this argument, the result of the proceeding would have been different.  Strickland, 466 U.S. at 694.

b.   Failure to Seek Redaction of Transcript

Petitioner contends that counsel should have argued that the 1982 preliminary hearing transcript should be redacted because it contained irrelevant and highly prejudicial information, as discussed above.

For the reasons set out there, Petitioner has failed to establish that, had counsel successfully moved for the allegedly prejudicial facts to be redacted, there is a reasonable probability that the result of the proceeding would have been different.  See

**United States District Court**
For the Northern District of California

Strickland, 466 U.S. at 694.  This claim of ineffective assistance of counsel does not warrant habeas relief.

       4.     Counsel's Failure to Seek Recusal of the Trial Court Judge

Petitioner argues that counsel was ineffective because he failed to move to recuse the trial judge.  The facts surrounding this claim are discussed above.  Counsel did not err.  Under California law, it is not grounds for disqualification if a judge "[h]as in any capacity expressed a view on a legal or factual issue presented in the proceeding."  Cal. Code Civ. Proc. § 170.2(b). The trial court's decision on a legal issue is not grounds for disqualification under California Code of Civil Procedure § 170.2(b).  Further, Petitioner has failed to establish the prejudice prong of Strickland.  As discussed above, Petitioner has not shown that another judge would have decided differently.  See Strickland, 466 U.S. at 694.

Accordingly, this claim of ineffective assistance of counsel does not warrant habeas relief.

       5.     Counsel's Failure to Investigate or Present Testimony from Gregory Miller

Petitioner contends that counsel was ineffective because he failed to investigate a man named Gregory Miller.  Petitioner alleges that Mr. Miller was the only non-law-enforcement percipient witness to the alleged offense.  Petitioner argues that Mr. Miller would have testified that he and Petitioner did not exchange drugs, thereby supporting Petitioner's defense that he did not know that any cocaine base was in his pants pocket.

The duty to investigate and prepare a defense does not require

42

United States District Court
For the Northern District of California

that every conceivable witness be interviewed.  <u>Hendricks v.</u>
<u>Calderon</u>, 70 F.3d 1032, 1040 (9th Cir. 1995).  A defendant's mere
speculation that a witness might have given helpful information if
interviewed is not enough to establish ineffective assistance of
counsel.  <u>See</u> <u>Bragg v. Galaza</u>, 242 F.3d 1082, 1087, <u>amended by</u> 253
F.3d 1150 (9th Cir. 2001).

Petitioner offers no evidence to support his contention that
Miller would have testified that he and Petitioner did not exchange
drugs.  Because a defendant's mere speculation is not enough to
establish ineffective assistance, counsel's failure to investigate
Miller is not deficient.  <u>Bragg</u>, 242 F.3d at 1087.

Moreover, to establish prejudice caused by counsel's failure
to call a witness, a petitioner must establish by a preponderance
of the evidence that the witness could have been called upon to
testify, what the witness' testimony would have been, and that the
witness' testimony would have had a reasonable likelihood of
weakening the prosecution's case.  <u>See</u> <u>Alcala v. Woodford</u>, 334 F.3d
862, 872-73 (9th Cir. 2003).

Petitioner cannot establish that Miller would have testified,
because Miller was deceased at the time of Petitioner's trial.
Even assuming that Miller would have testified that there had been
no drug deal between himself and Petitioner, Petitioner fails to
establish that such testimony would have had a reasonable
likelihood of weakening the government's case against him.  The
evidence against Petitioner was, first and foremost, the base
cocaine in his pocket.  Testimony that a drug deal did not take
place would not have had a reasonable likelihood of weakening the

United States District Court
For the Northern District of California

government's case because it would not have altered the fact that Petitioner was in possession of base cocaine. Given the strength of the government's case against Petitioner, there is no reasonable probability that the result of the proceeding would have been different had Miller testified. See Strickland, 466 U.S. at 694. For these reasons, Petitioner cannot establish ineffective assistance by counsel's failure to call Miller to testify.

The cases that Petitioner cites for support are distinguishable from his own. In Riley v. Payne, the petitioner Riley sought habeas relief by arguing that he was denied effective assistance of counsel for his counsel's failure to interview or call a witness who was present at the scene of Riley's alleged crime. 352 F.3d 1313, 1317 (9th Cir. 2003). The witness filed a declaration with the court stating that he would have testified in a way that would have supported Riley's claim of self-defense. Id. at 1317. The court held that counsel's failure to interview the witness rendered his performance below an objective standard of reasonableness. Id. at 1319. Here, in contrast, Petitioner offers no evidence to support his contention that Miller would have testified in a way that would have supported his defense.

Petitioner also relies on Soffar v. Dretke, 368 F.3d 441 (5th Cir. 2004). In that case, Soffar had been sentenced to death for robbing a bowling alley with another man, during which robbery three victims were shot to death and one was injured. Id. at 443-44. He sought habeas relief on grounds including that his counsel had been ineffective for failing to investigate the surviving victim. Id. at 471. The victim had provided the police with four

44

**United States District Court**
For the Northern District of California

statements and a post-hypnotic interview concerning the crime.  Id. at 474.  Soffar claimed that those statements would have undermined the reliability of his confession to the police.  Id. at 471. There was evidence to support the contention that the victim could have provided helpful testimony.  The victim's account of the robbery and the ballistic evidence were substantially consistent, whereas Soffar's confessed version of events conflicted with both. Id.  These inconsistencies were thus powerfully exculpatory.  This case, too, is inapposite to Petitioner's claim.

Because Petitioner has failed to establish either prong of the Strickland test, this claim of ineffective assistance of counsel does not warrant habeas relief.  Nor do all of counsel's claimed errors combined warrant relief.

E.   Cruel and Unusual Punishment

Petitioner contends that his sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment because it is grossly disproportionate to the crimes for which he has been convicted.

Petitioner's current sentence is twenty-seven years to life in prison for third-strike possession of a controlled substance in violation of California Health and Safety Code § 11350(a).  This sentence includes two one-year enhancements for Petitioner's 1982 convictions for burglary and attempted burglary, in violation of California Penal Code §§ 459 and 664.  In addition, Petitioner has seven other adult convictions:  three for vandalism, in violation of California Penal Code § 594(a); one for assault, in violation of California Penal Code § 240; one for battery, in violation of

**United States District Court**
For the Northern District of California

California Penal Code § 242; one for possession of drug paraphernalia, in violation of California Health and Safety Code § 11364, and one for sale of a controlled substance, in violation of California Health and Safety Code § 11352.

A criminal sentence that is not proportionate to the crime for which the defendant was convicted violates the Eighth Amendment. Solem v. Helm, 463 U.S. 277, 303 (1983) (sentence of life imprisonment without possibility of parole for seventh nonviolent felony violates Eighth Amendment). But "outside the context of capital punishment, successful challenges to the proportionality of particular sentences will be exceedingly rare." Id. at 289-90. For the purposes of review under 28 U.S.C. § 2254(d)(1), it is clearly established that "[a] gross proportionality principle is applicable to sentences for terms of years." Lockyer v. Andrade, 538 U.S. 63, 72 (2003). But the precise contours of the principle are unclear and "applicable only in the exceedingly rare and extreme cases." Id. at 73 (internal quotation marks omitted). "[T]he principle reserves a constitutional violation for only the extraordinary case." Id. at 76.

In Harmelin v. Michigan, 501 U.S. 957 (1991), Chief Justice Rehnquist and Justice Scalia joined in a two-justice plurality to conclude that Solem should be overruled and that no proportionality review was required under the Eighth Amendment except with respect to death sentences. See id. at 961-985. A three-justice concurrence made up of Justices Kennedy, O'Connor and Souter concluded that Solem should not be rejected and that the Eighth Amendment contains a narrow proportionality principle that is not

confined to death penalty cases, but that forbids only extreme sentences which are grossly disproportionate to the crime.  See id. at 997-1001.[7]  After Harmelin, only extreme sentences that are grossly disproportionate to the crime violate the Eighth Amendment. United States v. Carr, 56 F.3d 38, 39 (9th Cir. 1995).

In determining whether the sentence is grossly disproportionate under a recidivist sentencing statute, the court looks to whether such an "extreme sentence is justified by the gravity of [an individual's] most recent offense and criminal history." Ramirez v. Castro, 365 F.3d 755, 768 (9th Cir. 2004) (holding sentence of twenty-five years to life on petty theft with prior conviction was grossly disproportionate to crime where previous two strikes were the result of one negotiated plea resulting in a single county jail sentence).  In considering the relevance of the recent offense and criminal history, a court must consider the "factual specifics" of an individual's priors to determine whether the conduct involved violence or was particularly serious.  Reyes v. Brown, 399 F.3d 964, 970 (9th Cir. 2005) (holding that the record before the district court was not sufficiently detailed to make such a finding and remanding for further development of the record).

Relying on People v. Ayon, 46 Cal. App. 4th 385, 396-401

---

[7] Because no majority opinion emerged in Harmelin on the question of proportionality, Justice Kennedy's view -- that the Eighth Amendment forbids only extreme sentences that are grossly disproportionate to the crime -- is considered the holding of the Court.  See United States v. Bland, 961 F.2d 123, 128-29 (9th Cir.), cert. denied, 506 U.S. 858 (1992); see also United States v. Dubose, 146 F.3d 1141, 1146-47 (9th Cir. 1998).

47

United States District Court
For the Northern District of California

(1996), the state appellate court affirmed Petitioner's sentence because it determined that it was not grossly disproportionate to the offense committed. (Resp't's Ex. C, 9.)  In <u>Ayon</u>, the court had applied the standards of <u>Solem</u> and <u>Harmelin</u> to conclude that a sentence of 240 years to life for a recidivist thief did not constitute cruel and unusual punishment.  <u>Ayon</u>, 46 Cal. App. 4th at 396-97.

The appellate court noted that Petitioner's criminal history spanned twenty years and included convictions for robbery, battery, burglary and drug dealing.  (Resp't's Ex. C, 9.)  The court also noted that Petitioner was arrested for his third-strike offense just thirty-three days after he was released on probation for his drug dealing conviction.  <u>Id.</u>  The appellate court concluded that Petitioner's sentence did not constitute cruel and unusual punishment under the Eighth Amendment.  <u>Id.</u>

Because the appellate court properly applied controlling Supreme Court authority, its judgment was not contrary to federal law.  Emphasizing Petitioner's recidivism and the nature of his crimes, the appellate court's comparison of Petitioner's circumstances with those in <u>Harmelin</u> and <u>Solem</u> indicates that it reached a holding on the proportionality of Petitioner's sentence consistent with controlling Supreme Court authority.  Accordingly, this Eighth Amendment claim does not warrant habeas relief.

Petitioner also contends that his sentence constitutes cruel and unusual punishment because it is impermissibly based on his status as a mentally ill drug addict.  He alleges that he has been using drugs since he was fifteen and that all of his felony

48

**United States District Court**
For the Northern District of California

convictions and parole violations were either for drug possession
or motivated by the need to obtain drugs.  Petitioner attributes
his drug use to the need to self-medicate for his psychiatric
condition.  Petitioner alleges that he was not able to seek drug
treatment because there are no programs that address his need for
interlocking mental health and substance abuse treatment.

The cases Petitioner relies on for this argument are
distinguishable from his own.  In Robinson v. California, Robinson
was convicted under a statute which made addiction to narcotics a
criminal offense.  370 U.S. 660, 666 (1962).  Although there was
evidence that Robinson had used narcotics, the jury was instructed
that it could convict him even if it disbelieved that evidence.
Id. at 665.  The Supreme Court held that the statute impermissibly
made the "status" of narcotic addiction a criminal offense, thereby
rendering Robinson's sentence cruel and unusual punishment.  Id. at
667.

In the instant case, Petitioner was convicted under California
Health and Safety Code § 11350(a).  Because this statute makes the
act of possessing cocaine illegal, it does not run afoul of the
Supreme Court's decision in Robinson.  Petitioner was punished for
the act of possessing cocaine, not for his status as a drug addict.

In United States v. Kidder, Kidder was indicted for conspiracy
to distribute cocaine and possession, with intent to distribute, of
more than 500 grams of cocaine.  869 F.2d 1328 (9th Cir. 1989).
Kidder argued that his imprisonment deprived him of necessary
medical treatment for post-traumatic stress disorder (PTSD), in
violation of the Eighth Amendment.  Id. at 1330.  The court held

**United States District Court**
For the Northern District of California

1  that because Kidder was seeking to void his sentence, he had to

2  show not just that his treatment was inadequate, but that it could

3  not be made adequate.  <u>Id.</u> at 1331.

4      Petitioner has not made such a showing.  He has not presented

5  any evidence to support his allegation that the California

6  Department of Corrections told the trial court that effective drug

7  treatment is generally not available in its institutions.

8  Moreover, Petitioner has not shown that there is no way for him to

9  receive adequate treatment while incarcerated.

10     F.   Ineffective Assistance of Appellate Counsel

11     Petitioner contends he received ineffective assistance of

12  appellate counsel.  The due process clause of the Fourteenth

13  Amendment guarantees a criminal defendant's right to the effective

14  assistance of counsel on his first appeal.  <u>See</u> <u>Evitts v. Lucey</u>,

15  469 U.S. 387, 391-405 (1985).[8]  Claims of ineffective assistance of

16  appellate counsel are reviewed according to the standard set out in

17  <u>Strickland</u>.  <u>Miller v. Keeney</u>, 882 F.2d 1428, 1433 (9th Cir. 1989);

18  <u>United States v. Birtle</u>, 792 F.2d 846, 847 (9th Cir. 1986).  A

19  defendant therefore must show that counsel's advice fell below an

20  objective standard of reasonableness and that there is a reasonable

21  probability that, but for counsel's unprofessional errors, he would

22  have prevailed on appeal.  <u>Miller</u>, 882 F.2d at 1434 n.9 (citing

23

24     [8] Although the right to the effective assistance of counsel at
25  trial is guaranteed to state criminal defendants by the Sixth
    Amendment as applied to the States through the Fourteenth
26  Amendment, the Sixth Amendment does not address a defendant's
    rights on appeal; the right to effective state appellate counsel is
27  derived purely from the Fourteenth Amendment's due process
    guarantee.  <u>See</u> <u>Evitts</u>, 469 U.S. at 392.

28

**United States District Court**
For the Northern District of California

*Strickland*, 466 U.S. at 694, and *Birtle*, 792 F.2d at 849).

It is important to note that appellate counsel does not have a constitutional duty to raise every non-frivolous issue requested by the defendant. *See* *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983); *Gerlaugh v. Stewart*, 129 F.3d 1027, 1045 (9th Cir. 1997); *Miller*, 882 F.2d at 1434 n.10. The weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy. *See* *Miller*, 882 F.2d at 1434. Appellate counsel therefore will frequently remain above an objective standard of competence and have caused his client no prejudice simply because he declined to raise a weak issue. *Id.*

Petitioner contends appellate counsel did not raise all of the aforementioned issues on appeal or did not raise them adequately and effectively. However, for the reasons previously discussed, the issues that Petitioner alleges appellate counsel should have raised would not likely have succeeded. Therefore, Petitioner has failed to meet his burden in proving either prong of the *Strickland* test. He has not established that appellate counsel's performance fell below an "objective standard of reasonableness" under prevailing professional norms, nor has he established that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 687-88, 694. Thus, Petitioner's claim of ineffective assistance of appellate counsel does not entitle him to habeas relief.

**United States District Court**
For the Northern District of California

III. Evidentiary Hearing

Petitioner requests an evidentiary hearing if this Court does not grant his petition on the current record.

A federal evidentiary hearing is mandatory if (1) the petitioner's allegations, if proven, would establish the right to relief, and (2) the state court trier of fact has not, after a full and fair hearing, reliably found the relevant facts. Williams v. Calderon, 52 F.3d 1465, 1484 (9th Cir. 1995), cert. denied, 516 U.S. 1124 (1996); Jeffries v. Blodgett, 5 F.3d 1180, 1187 (9th Cir. 1993), cert. denied, 510 U.S. 1191 (1994). Circumstances under which an evidentiary hearing is not required include: (1) where the petitioner fails to make out a "colorable claim" for relief, Williams, 52 F.3d at 1484; (2) where there are no disputed facts and the claim presents a purely legal question, id.; (3) where the issues presented can be resolved by reference to the state court record, Totten v. Merkle, 137 F.3d 1172, 1176 (9th Cir. 1998); (4) where the petitioner seeks to present the same evidence heard by the state court in state habeas proceedings, Villafuerte v. Stewart, 111 F.3d 616, 632-33 (9th Cir. 1997); and (5) where the facts were developed in state proceedings, but the expanded claims relying on such facts were procedurally defaulted by the petitioner's failure properly to present them to the highest state court for review, Brown v. Easter, 68 F.3d 1209, 1212 (9th Cir. 1995).

Petitioner provides no evidence of disputed facts, which, if resolved in his favor, would result in habeas relief. Thus, no evidentiary hearing is required. Accordingly, the motion for an

1  evidentiary hearing is DENIED.

2                        CONCLUSION

3       For the foregoing reasons, the Court DENIES the petition

4  for writ of habeas corpus.  Judgment shall enter accordingly.

5  Each party shall bear his or her own costs.  The Clerk shall

6  close the file.

7

8

9  Dated: 12/14/07

10                              _____
                                CLAUDIA WILKEN
                                United States District Judge